UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BRIAN CHARLES PIERRE
CONSTANT, III,

     Plaintiff,

v.                                                            Case No.  5:20-cv-85-TKW/MJF

JEFFREY BROWN, *et al.,*

     Defendants.

_____/

## SECOND REPORT AND RECOMMENDATION

Plaintiff Brian Charles Pierre Constant, III has filed a third amended complaint under 42 U.S.C. § 1983. Doc. 12. Defendants Brown and Land move to dismiss the complaint for failure to exhaust administrative remedies. Docs. 29, 32. Constant opposes the motion. Doc. 34. The undersigned recommends that Brown and Land's motion to dismiss be denied.[1]

### I. BACKGROUND AND PROCEDURAL HISTORY

The background and procedural history of this case are outlined in the undersigned's first report and recommendation dated March 12, 2021. Doc. 13. In

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

short, Constant is an inmate of the Florida Department of Corrections ("FDC") who is temporarily out of FDC custody and confined at the Marion County Jail.[2] Constant was confined at the county jail at the time he commenced this lawsuit and has remained confined there throughout this litigation. *See* Doc. 1; Doc. 34.

Constant's third amended complaint alleges that on October 21, 2019, when Constant was in FDC custody confined at Holmes Correctional Institution, prison officials used excessive force on him in violation of the Eighth Amendment. Doc. 12. Specifically, Constant alleges that on October 21, 2019, he was sitting on his bunk when Colonel Jeffrey Brown, Captain J. Land, Sergeant Taylor, and Officer Q. Baine entered his cell and informed him that they were going to search his bunk. Doc. 12 at 8. Constant responded, "I want to know why you want to search my bunk." *Id*. Land began searching Constant's locker. Taylor and Baine ordered Constant to stand. Taylor gave Constant a second order to stand and, when Constant did not comply, Brown retrieved a pair of handcuffs and cuffed Constant "fast and hard." *Id.* Brown and Land then grabbed Constant by the arms, pulled him up off his bunk, and ordered him to walk. *Id.* When Constant did not walk, they carried Constant by the arms to confinement. *Id.* Along the way, Taylor switched places

---

[2] Constant's Florida Department of Corrections inmate number is DC# U59225. *See* Doc. 12 at 9, Attach. Constant's Marion County Jail inmate number is A0229315. Doc. 12 at 1.

with Brown, and he and Land continued carrying Constant to confinement. Constant alleges that when they reached the center gate, either Brown or Land "grab[bed] my collar (back part) and choke[d] me out and immediately lost consciousness, and came to on the ground." *Id.* Constant claims that as a result of the incident, he has "anxiety/depression/insomnia" and chronic back and neck pain. *Id.* Nine days after the incident, on October 30, 2019, Constant was moved to the Marion County Jail. *Id*. at 9. Constant's complaint seeks compensatory damages and injunctive relief. *Id*. at 10.

On March 12, 2021, the undersigned recommended that a portion of Constant's complaint be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A, for failure to state a claim upon which relief can be granted. Doc. 13. On April 5, 2021, the District Court adopted the recommendation and dismissed Constant's Eighth-Amendment excessive force claims against Brown, Taylor, Baine and Land for handcuffing and carrying Constant to confinement. Doc. 15. The District Court also dismissed Constant's claim for injunctive relief. *Id.* The District Court returned the case to the undersigned for further pretrial proceedings on Constant's Eighth-Amendment excessive force claim based on a Defendant (Brown or Land) allegedly choking Constant to unconsciousness during transport to confinement on October 21, 2019. *Id.*

Brown and Land move to dismiss Constant's remaining claim, under Rule 12(b) of the Federal Rules of Civil Procedure, on the ground that he failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Docs. 29, 32. Brown and Land describe the FDC's administrative grievance procedure and state that because Constant did not file any grievances and/or appeals concerning the choking incident between the date it happened (October 21, 2019) and the date he initiated this lawsuit (March 11, 2020), his claim must be dismissed. Doc. 29 at 11-12 & Attach. Constant responds that he "made an effort" to exhaust his administrative remedies but that he "never could write to the Secretary in Tallahassee" for a number of reasons. Doc. 34.

## II. DISCUSSION

### A.  <u>The PLRA's Exhaustion Requirement</u>

The Prison Litigation Reform Act of 1995 ("PLRA") provides in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they

seek injunctive relief, monetary damages, or both. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Exhaustion of available administrative remedies is a mandatory pre-condition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) ("The 'available' 'remed[y]' must be 'exhausted' before a complaint under § 1983 may be entertained."). The Supreme Court has emphasized, however, that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (quoting *Booth*, 532 U.S. at 738); *see also Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) ("A remedy has to be available before it must be exhausted.").

Generally, the FDC's administrative remedy program, set out in Chapter 33-103 of the Florida Administrative Code, provides inmates a three-step process for exhausting administrative remedies. Except in circumstances inapplicable here, inmates must utilize the informal grievance process prior to initiating a formal grievance. Fla. Admin. Code § 33-103.005(1). The informal grievance must be submitted on FDC Form DC6-236, titled "Inmate Request." *Id.*, § 33-103.005(2). The inmate must place the informal grievance in a "locked grievance box," which "shall be available to inmates in open population and special housing units." *Id.*, § 33-103.005(1)(a). An informal grievance must be received (meaning, placed in the grievance box) within 20 days of when the incident or the aggrieved action occurred.

*Id.*, § 33-103.011(1)(a). The 20-day time frame commences on the day following the date of the incident. *Id.*, § 33-103.001.

The second step of the FDC's three-step grievance process is a formal grievance. *See* Fla. Admin. Code § 33-103.006. The inmate must file a formal grievance on FDC Form DC1-303, titled "Request for Administrative Remedy or Appeal." *Id.*, § 33-103.006(1). A formal grievance must be received no later than 15 calendar days from the date of the staff member's response to the informal grievance. *Id.*, § 33-103.001(b)1. The FDC's administrative rules instruct the inmate to submit the formal grievance to the warden, assistant warden, or deputy warden if the inmate is in an FDC institution or private correctional facility. *Id.* § 33-103.006(1)(a). If the inmate is in a road prison, vocational center, work camp, community correctional center, or contract facility, the inmate must submit the formal grievance to the warden or assistant warden of the supervising institution. *Id.*, § 33-103.006(1)(b). The FDC administrative rules do not state where or to whom an inmate housed outside of FDC custody (e.g., a county jail) must submit the formal grievance.

The third step of the FDC's three-step grievance process is an appeal to the Office of the Secretary. *See* Fla. Admin. Code § 33-103.007. The inmate must use FDC Form DC1-303, titled "Request for Administrative Remedy or Appeal." *Id.*, § 33-103.007(1). Grievance appeals to the Office of the Secretary must be received

within 15 calendar days from the date the response to the formal grievance is returned to the inmate. *Id.*, § 33-103.011(c).

## B.    <u>Framework for Evaluating Defendants' Exhaustion Defense</u>

Brown and Land's exhaustion defense rests on Constant's failure to seek relief through the FDC's inmate grievance procedure prior to initiating this lawsuit. Brown and Land state that the records of the FDC and the Marion County Jail were searched for grievances and appeals filed by Constant between October 21, 2019 (the date of the incident) through March 11, 2020 (the date Constant initiated this lawsuit). *See* Doc. 29 at 4. Brown and Land submitted sworn declarations from the following individuals: (1) Tunisa Donely, a sergeant with the Marion County Sheriff's Office and records custodian for grievances and appeals; (2) Jacqueline Adams, a correctional program administrator with the FDC and custodian of records for inmate grievance appeals; and (3) Marsha Spracklen, a correctional sentence specialist with the FDC and custodian of records for inmate grievances filed a Holmes C.I. Doc. 29, Exs. A, B, C, respectively. Each of the declarants states that she reviewed the available records for Constant, including grievances and appeals, from October 21, 2019 through March 11, 2020, and Constant filed no grievances or appeals with the FDC or the Marion County Jail during that time. *Id.*

Brown and Land's exhaustion defense depends upon this court determining that Constant failed to properly exhaust his administrative remedies before filing this

Page 7 of 13

lawsuit, but first this court would have to conclude that the FDC's administrative grievance procedure was—or still is—available to Constant. Constant's response to the motion to dismiss alleges, essentially, that the FDC's administrative grievance process was unavailable to him. Doc. 34. Constant explains that (1) his pens, envelopes and stamps were confiscated from his property at Holmes CI on October 21, 2019, and never returned; (2) when he tried to file grievances they were sent back to him; and (3) copies of his grievances were destroyed (shredded). Doc. 34.

Of greater significance, however, Constant's pleadings also allege—and Brown and Land do not dispute—that Constant was transferred out of FDC custody to the Marion County Jail on October 30, 2019, just 9 days after the choking incident on October 21, 2019. *See* Doc. 12 at 9; *see also* Doc. 2 at 13 (Constant's inmate account statement from the Marion County Jail).

In *Ross v. Blake*, the Supreme Court provided the following framework for evaluating the "availability" of administrative remedies:

> Building on our own and lower courts' decisions, we note as relevant here three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief. Given prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise. But when one (or more) does, an inmate's duty to exhaust "available" remedies does not come into play.

578 U.S. at 643 (internal citations omitted). The Supreme Court went on to describe the following circumstances where an administrative remedy "is not capable of use to obtain relief." *Ross*, 578 U.S. at 643.

First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." 578 U.S. at 643 (citation omitted).

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." 578 U.S. at 643. In other words, "when a remedy is . . . essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Id.* at 644 (citing *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1323 (11th Cir. 2007), and *Turner*, 541 F.3d at 1084).

And third, "the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644.

The Eleventh Circuit has established a "'two-step process' for analyzing exhaustion at the motion-to-dismiss stage." *Varner v. Shapard*, 11 F.4th 1252, 1257-58 (11th Cir. 2021) (quoting *Turner*, 541 F.3d at 1082). In *Varner*, a case addressing both (1) whether administrative remedies under a prison grievance procedure were

available, and (2) whether the remedies were properly exhausted, the Eleventh
Circuit applied this two-step process:

> A district court must first determine whether the complaint should be
> dismissed for lack of exhaustion taking the plaintiff's version of the
> facts as true. Second, if the complaint is not dismissed at the first step,
> the district court must make specific findings in order to resolve the
> disputed factual issues related to exhaustion, bearing in mind that
> defendants have the burden of proof, and decide whether under those
> findings the prisoner has exhausted his available administrative
> remedies.

11 F.4th at 1258 (internal quotation marks and citations omitted).

## C.   <u>Application of the Two-Step Process for Analyzing Exhaustion</u>

As explained earlier, the FDC's inmate grievance procedure begins with an
informal grievance and continues with a formal grievance to the warden of the
institution and an appeal to the Office of the Secretary. According to the FDC's
grievance procedure, the deadline for Constant to initiate the FDC grievance process,
by filing an informal grievance, was November 10, 2019 (20 days after the choking
incident on October 21, 2019). *See* Fla. Admin. Code § 33-103.011(1).

Constant was transferred out of FDC custody on October 30, 2019, which is
a mere 9 days after the incident. *See* Doc. 12 at 9. The transfer occurred *before*
Constant's 20-day period to *initiate* the grievance process expired, and *well before*
he could have *completed* the FDC's administrative remedy process.

The FDC's grievance procedure explains how an inmate should utilize the grievance procedure in the event he is transferred *from one FDC institution to another*:

> (4) All informal and formal grievances, except those administrative appeals filed directly with the Office of the Secretary, must be filed at the institution or facility to which the inmate is presently assigned. "Presently assigned" means the institution or facility in which the inmate is housed at the time he files either the informal or formal grievance. When either the informal or formal grievance complaint concerns an informal or formal grievance that occurred at another location, it shall remain the responsibility of the staff at the inmate's present location to handle the informal or formal grievance. The final resolution of the informal or formal grievance is the responsibility of the warden at the institution to which the inmate is presently assigned. Direct contact with outside staff may be necessary in resolving the informal or formal grievance.

Fla. Admin. Code r. 33-103.015(4). But the FDC's grievance procedure does not explain how an inmate can utilize the grievance procedure in the event he is temporarily transferred *out of FDC custody* shortly after the incident.

The Defendants have not identified any rule or procedure prescribing how and where Constant could have—or still can—file an informal or formal grievance and appeal. Furthermore, if such a procedure exists, Defendants do not explain how Constant knew or reasonably could have known about it. *See Goebert*, 510 F.3d at 1322-23 (an administrative remedy is not "available" to a prisoner if he does not know about it and cannot discover it through reasonable effort); *Turner*, 541 F.3d at

1084 ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available.").

Defendants Brown and Land have not satisfied their burden of showing that an administrative remedy was, or currently is, "available" to Constant—as that term is used in § 1997e(a) and defined by the Supreme Court—to exhaust the choking incident that occurred at Holmes C.I. on October 21, 2019. Therefore, Defendants' motion to dismiss should be denied.

### III. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    Defendant Brown and Land's motion to dismiss, Doc. 29, be **DENIED**.

2.    The District Court return this case to the undersigned for further proceedings.

At Pensacola, Florida, this 14th day of December, 2021.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not**

**control.** **An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. _See_ 11th Cir. R. 3-1; 28 U.S.C. § 636.**